UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05CV-P399-H

STEVE E. MARTIN                                                     PLAINTIFF

v.

DR. DOUGLAS CRALL *et al.*                                         DEFENDANTS

### MEMORANDUM OPINION

The plaintiff filed a *pro se* complaint pursuant to 42 U.S.C. §§ 1983, 1985, and 1986.

This matter is before the Court for *sua sponte* screening pursuant to 28 U.S.C. § 1915A and

*McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).  For the reasons that follow, all claims

will be dismissed except for the Eighth Amendment delay- and denial-of-medical-treatment/

conspiracy claims brought pursuant to § 1983 and the state-law claim of intentional infliction of

emotional distress.

## I.  SUMMARY OF CLAIMS

The plaintiff is a convicted inmate currently incarcerated at the Kentucky State

Reformatory ("KSR").  His complaint names seventeen defendants currently or formerly

employed by the Kentucky Department of Corrections ("KDOC").  Defendant Vertner L. Taylor

is a former Commissioner of the KDOC, George Million is a former Acting Commissioner, and

John D. Rees is the current Commissioner.  Defendant Dr. Douglas Crall is the former Medical

Director of the KDOC and Defendant Scott Haas is the current Medical Director.  Defendant

Janet Conover is Ombudsman for the KDOC.  Defendant William Seabold is a former Warden at

KSR, Defendant Larry Chandler is the current Warden at KSR, and Defendants Barbara

Hazelwood and Thomas D. Mugavin are Deputy Wardens at KSR.  Defendants Dr. Steven White

and Dr. Mazen Khayat are in-house physicians at KSR, and Defendants Debbie D. O'Ordine, NSA, and Salvatore Iweimrin, R.N., are nurses at KSR. Finally, Defendant Beverly Purvis is a Grievance Coordinator at KSR, Defendant Richard VanWye is a Sergeant at KSR, and Harley Allen is an Internal Affairs Officer at KSR. The plaintiff sues each defendant in his or her individual and official capacities, seeking monetary and punitive damages and injunctive relief in the form of a nose replacement.[1]

Upon reviewing the plaintiff's lengthy complaint and its numerous attachments, the Court will summarize the following five claims raised by the plaintiff: denial and delay of medical treatment, denial of two visits with his sister, denial of stamps and copies of legal documents and medical records despite his indigency, a faulty grievance mechanism, and retaliation. As to each claim, the plaintiff broadly asserts violations of the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 13, 14, 109, 112 of the Kentucky Constitution.

**Denial and delay of medical treatment.**  Broadly, the plaintiff claims a delay in medical treatment causing the spread of cancer and removal of his nose, the denial of proper aftercare treatment, and the denial of reconstructive nose surgery. He further alleges that the numerous defendants "acted in union" to conspire to deprive him of necessary medical care.

---

[1]He additionally asks for "attorney's fees if the Court will award [him] an attorney as he is only a layman or appoint Inmate Lawrence M. Froman, as his legal Counsel, in this case." To the extent the plaintiff seeks appointment of an attorney, he must file a separate motion and provide reasons for such request. Under no circumstance, however, will the Court entertain a motion to appoint another inmate as legal counsel. To do so would condone the unauthorized practice of law. 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage."); *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991) (explaining that § 1654 "'does not allow for unlicensed laymen to represent anyone else other than themselves'") (citation omitted).

2

More specifically, the plaintiff recounts that in early 2003, he complained of a sore on his nose, but Defendant Dr. White provided him with "no treatment at all, [and] the infections kept growing." (DN 3, Compl., p. 7-B). Dr. White concluded that the plaintiff had an infected hair due to the plaintiff's picking his nose. "Had Dr. [] White only requested a Biopsy of this running sore, Plaintiff's nose could have been saved." *Id.* at p. 7. Sometime thereafter, a Dr. Welch "recommended a Biopsy, Cat Scan, and expedient surgery." *Id.* at p. 7-D. Defendant Dr. Haas, however, delayed approval of the nose surgery, causing the cancer to spread to the plaintiff's lymph nodes.[2] Consequently, on the date of surgery on July 14, 2003, the plaintiff's nose was amputated and the affected lymph nodes were removed.

After the plaintiff's release from the hospital following the nose amputation, he was denied proper aftercare. Specifically, claims the plaintiff, the KSR nurses were not giving him his doctor-ordered medications and nutritional drinks. Also, his feet became "bloody raw and nasty . . . with drainage from the psuedomonis bacteria infection," and physicians failed to treat him for it. *Id.* at Attach., Grievance No. 04-360. Also following the operation, Dr. Donald Welsh[3] and Defendant Dr. White informed the plaintiff that he was scheduled for a nose-replacement. To date, however, the plaintiff has not undergone such surgery, as Defendants Dr. Haas, Dr. White, Dr. Khayat and Nurse Iweimrin have denied his request for immediate reconstructive nose surgery.[4]

---

[2]The plaintiff now suspects that "the cancer has [] spread to his ears and hearing, and he does not know just how far in his body the cancer has spread." *Id.* at p. 7-Q.

[3]It is unclear whether the Dr. Welsh referenced here and the Dr. Welch referenced in the prior paragraph are the same person.

[4]The Court notes that Defendant Dr. Haas rendered a final medical review decision on December 20, 2004, advising that "[t]he procedure for prosthesis was approved but it was decided that the prosthetic

In addition to the defendants mentioned above, the plaintiff alleges that several other defendants (Commissioner Taylor, Dr. Crall, Warden Seabold, Warden Chandler, Deputy Warden Hazelwood, and Deputy Warden Mugavin)[5] knew of his nose condition before the amputation and/or after but did nothing about it and/or continue to do nothing about it. He further contends that Defendants O'Ordine, Allen, and Million were deliberately indifferent when they denied him requested medical information, preventing him from getting a second opinion, from comparing one doctor's opinion with another doctor's opinion, and possibly from getting back to the "street Doctors in time to save his nose."[6] *Id.* at pp. 7-jj, 7-kk, 7-mm. He additionally reports severe suffering and permanent injury due to not getting a replacement nose, and he claims that the defendants' actions have caused "profound emotional stress, psychiatric

device would not be placed for one year to give adequate time to ensure that the malignancy would not recur." (DN 3, Compl., Attach.). Dr. Haas continued, "you should realize that this procedure is not medically necessary, and is only being offered to you as procedure of cosmetic compassion, considering your difficult situation and the social factors associated with the cosmetic defect." *Id.* Over a year has passed since Dr. Haas' decision, yet per a recent filing by the plaintiff (DN 9), the operation has yet to be performed.

[5]Defendant Taylor was Commissioner during the time the plaintiff "was begging for Medical attention and care" but failed to intervene and correct the problem. (Compl., p. 7-I). Dr. Crall "had complete control over the money spent on prisoner's medications, outside doctor's trips and hospital stays, but he denied Plaintiff this needed treatment." *Id.* at p. 7-N. Warden Seabold "had full say as to if Plaintiff was treated, as he was Warden over the Doctors [] at K.S.R. and had the auth[or]ity to get the Medical Director to ok this procedure for Plaintiff, but did not do this." *Id.* at p. 7-Q. Warden Chandler "indirectly caused Plaintiff to lose his nose, and had the authority to correct this problem as it exist today, but has not taken any measures to correct said problem." *Id.* at p. 7-T. The plaintiff further believes that Warden Chandler "has been forcing the Doctors to make wrong decisions against Plaintiff and his medical care." *Id.* at p. 7U. Defendant Hazelwood "made all the medical decisions, based on her knowledge and her position," *id.* at p. 7-W, and she "denied Plaintiff the Doctor's recommendations made by the Street Doctors which directly resulted in the failure to save Plaintiff's nose." *Id.* at p. 7-Y. Deputy Warden Mugavin "was aware of Plaintiff's nose and the condition it was in, yet stood by and let the infectins presist." *Id.* at p. 7-ee. Mugavin further refused to treat the plaintiff "when he knew of the problem with his nose, and saw the swelling himself." *Id.* at p. 7-ff.

[6]According to the plaintiff, "the Doctors failed to get Plaintiff back to the street Doctors in time to save his nose, maybe due to him not getting the copies he needed, and Defendant Harley Allen was the person who stopped these copies." *Id.* at p. 7-kk.

trauma, humiliation, and embarrassment, future financial loss, and a fundamental affront to his human dignity and well-being." According to the plaintiff, he is alone and shunned and teased by most of the prisoners at KSR and has suffered extreme emotional distress and outrage from other inmates making jokes and teasing him.

**Denial of two visits with his sister.** On September 7, 2003, the plaintiff's sister went to KSR to visit the plaintiff and waited 2½ hours, but the plaintiff was not notified of his sister's presence. (Compl., Ex. 5). Thereafter, on October 5, 2003, the plaintiff's sister returned for an extended visit, but Defendant Sgt. VanWye denied the visit stating that the computer had the plaintiff listed for a "'behind the glass'" security visit. In a memorandum, Defendant Mugavin explained that the plaintiff's sister was turned away due to an incorrect computer entry listing the plaintiff's visits as being restricted, even though his visiting restrictions were lifted in April 2000. *Id.* at Ex. 4. Defendant Mugavin offered an extended visit to the plaintiff's sister but denied reimbursement for traveling expenses. Defendant Million, former Acting Commissioner, denied the grievance on this issue. The plaintiff opines that the visits were denied due to the defendants' fear that she would get a picture of his nose, which was "very large" at that time.

**Denial of stamps and copies despite indigency.** The plaintiff claims that Defendants Allen,[7] Purvis, O'Ordine, and Million have denied him access to courts by denying his requests for stamps, legal copies, and copies of medical records even though he is indigent. (Compl., pp. 7-Z, 7-ii, 7-kk). He alleges that he needed a copy of his medical file to file this civil action, that

---

[7]An attached memorandum from Defendant Allen reveals that the institution is not required to provide indigent inmates with more than two stamps a week unless the inmate can document an actual court deadline. (Compl., Ex. 8). If an inmate demonstrates a definite court deadline, "then the inmate shall be allowed to have copies and postage upon signing a cash pay order when their cash accounts are inadequate to pay the expense." *Id.*

he needed legal copies to file an appeal with the Kentucky Supreme Court, and that he was denied copies to perfect this case.

**No meaningful grievance procedure.**  According to the plaintiff, the Grievance Procedure [] at K.S.R. Is a JOKE."  (DN 3, Compl., p. 7-X).  His main plaint is that medical decisions were non-grievable prior to December 1, 2004, preventing him from exhausting his administrative remedies and denying him access to federal court.  The plaintiff claims that by making medical grievances non-grievable in the past, Defendant Commissioner Rees "made the decision to stop [the grievances] before they ever reached his office, thus making sure that no one could file a § 1983 civil complaint."  *Id.* at p. 7-O.

Throughout the complaint, the plaintiff highlights additional problems that he has encountered with the KSR grievance procedure.  For instance, he claims that Defendant Warden Chandler along with Defendant Grievance Coordinator Purvis are "stopping grievances from getting to Frankfort," *id.* at p. 7-S; that Defendant Chandler always "sides with the Informal resolution" therefore "denying [his] First Amendment Rights," *id.*; and that Defendant Purvis has denied him access to court by not allowing him to file a medical grievance, *id.* at p. 7-Z, and by declaring one of his grievances as past the five-day time limit.  *Id.* at p. 7-aa.  Defendant Ombudsman Conover has delayed the plaintiff's grievances "for some years now," *id.* at p. 7-dd; Defendant Hazelwood has denied the plaintiff the right to file a grievance because it was more than five days past the date of the incident, *id.* at p. 7-X; Defendant O'Ordine failed to submit a copy of a consult request as part of the informal resolution, *id.* at p. 7-ii; and Defendant Acting Commissioner Million violated his rights by denying several grievances.  *Id.* at p. 7-mm.

**Retaliation.**  At one point in the complaint, the plaintiff asserts a violation of his civil rights "under the Mental Health Program and Medical Treatment in *retaliation* for his speaking out against the Physical and mental abuse he has suffered by the Defendants," (DN 3, Compl., p. 7-A) (emphasis added), and he claims that "unnamed Correctional Staff have taken retaliatory actions against [him] and correctional Staff for reporting instances."  *Id.*  At another point in the complaint, he claims that he can prove that the defendants' denying him access to the law library and copy room constituted retaliation.  *Id.* at p. 7-H.  He then claims that "[t]hey knew [his] nose was infected, yet did nothing, they knew after a few weeks, [he] had cancer, yet they did nothing for 50 plus days, and they do not like [his] criminal charges, which will prove retaliation."  *Id.*  And on yet another occasion, the plaintiff mentions retaliation by Defendants Chandler and Purvis due to their not allowing him to file a grievance, but he reports no adverse action on the part of those individuals.  *Id.* at p. 7-T.  Finally, in the exhaustion section of the complaint, the plaintiff writes that he grieved the following claims:

> Denial of Medical treatment, letting my cancer get so bad, they had to remove my nose, and after care treatment after returning from hospital, infections in my leg, due to lack of medications and after care, denying me a visit from my sister, due to this grievance, all on *retaliation purposes* only against me for filing grievances on my denial of medical care and treatment, and the lack thereof.

*Id.* at p. 4 (emphasis added).

## II.  STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, this Court must review the instant action.  28 U.S.C. § 1915A ("The court shall review, . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."); *McGore v. Wrigglesworth*, 114 F.3d 601, 604-05 (6th Cir. 1997).  Upon review, this Court must dismiss

7

"the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." § 1915A(b).  A complaint may be dismissed as frivolous under § 1915A if it is premised on a nonexistent legal interest or delusional factual scenario.  *Neitzke v. Williams*, 490 U.S. 319, 329-30 (1989).  A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).  In reviewing a complaint under this standard, the Court must accept all factual allegations contained in the complaint as true and must also construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

In addition, the Prison Litigation Reform Act established an administrative exhaustion requirement codified at 42 U.S.C. § 1997e(a).  Section 1997e(a) provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  In enacting this provision, Congress imposed a prerequisite upon prisoners seeking to bring conditions-of-confinement claims. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  The exhaustion of administrative remedies is now mandatory, rather than discretionary.  *Id.*; *Brown v. Toombs*, 139 F.3d 1102 (6th Cir. 1998). "[T]he purpose of the exhaustion requirement is to provide states the first opportunity to resolve problems themselves, [and] an inmate who has not pursued available administrative remedies may not yet proceed in federal court."  *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003).

8

"If a district court is presented with a 'mixed' petition, it has the power under [42 U.S.C. § 1997e(c)(2)] to dismiss any frivolous claims, exhausted or not, *with prejudice*." *Jones Bey v. Johnson*, 407 F.3d 801, 807 (6th Cir. 2005), *petition for cert. filed*, 74 U.S.L.W. 3424 (U.S. Jan. 9, 2006) (No. 05-874).  "In the alternative, the court could dismiss the entire action without prejudice and allow the prisoner to re-file only exhausted claims."  *Id.* (adopting the total exhaustion rule).

### III.  ANALYSIS

### A.  42 U.S.C. § 1985

Section 1985 contains three subsections and five broad categories of conspiratorial activity.  *Kush v. Rutledge*, 460 U.S. 719, 724 (1983).  "Three of the five broad categories . . . relate to institutions and processes of the federal government--federal officers, § 1985(1); federal judicial proceedings, the first portion of § 1985(2); and federal elections, the second part of § 1985(3)."  *Id.*  As the plaintiff sues only state officials, clearly none of those provisions apply in this case.

As to the remaining two categories of conspiratorial activity, the second portion of § 1985(2) prohibits conspiracies that interfere with the administration of justice in state court, *Kush v. Rutledge*, 460 U.S. at 725, and the first portion of § 1985(3) is concerned with "the private enjoyment of 'equal protection of the laws' and 'equal privileges and immunities under the laws.'"  *Kush v. Rutledge*, 460 U.S. at 724.  The plaintiff nowhere mentions any conspiracy to interfere with the administration of justice in state court.  And, to prove a conspiracy under the first portion of § 1985(3), the plaintiff must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action,'" *Kush v.*

*Rutledge*, 460 U.S. at 726 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)), an

allegation which is wholly devoid in the complaint.

For these reasons, the § 1985 conspiracy claim must be dismissed.

### B.  42 U.S.C. § 1986

A cause of action under § 1986 is based on the violation of § 1985.  *Bartell v. Lohiser*,

215 F.3d 550, 560 (6th Cir. 2000) (explaining that a "§ 1986 claim is derivative and conditioned

on establishing a § 1985 violation").  As this Court has already concluded that there is no

violation under § 1985, the § 1986 claim fails and must be dismissed.

### C.  42 U.S.C. § 1983

As a preliminary matter, the Court advises that the defendants in their official capacities

for damages are not "persons" subject to suit within the meaning of § 1983.  *Will v. Mich. Dep't*

*of State Police*, 491 U.S. 58, 71 (1989).  Additionally, such defendants are absolutely immune

from § 1983 liability under the Eleventh Amendment to the United States Constitution.  *Id.*

Consequently, the § 1983 damages claims against all defendants in their official capacities must

be dismissed.

### 1.  Denial and Delay in Medical Treatment

Although the plaintiff broadly alleges a violation of the First, Fifth, Eighth, and

Fourteenth Amendments to the United States Constitution, only the Eighth Amendment is

applicable to his claims of denied and delayed medical treatment.  Thus, the purported First,

Fifth, and Fourteenth Amendment claims will be dismissed as frivolous.

To sustain an Eighth Amendment cause of action under § 1983 for failure to provide medical treatment, a plaintiff must demonstrate that the defendants acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

> An Eighth Amendment claim has two components, one objective and one subjective. To satisfy the objective component, the plaintiff must allege that the medical need at issue is "sufficiently serious." To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.

*Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)), *cert. denied*, 537 U.S. 817 (2002). "'[D]eliberate indifference may be established by a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment.'" *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 844 (6th Cir. 2002) (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). "Moreover, '[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference.'" *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d at 844 (quoting *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989)).

To the extent the plaintiff alleges that Defendants Allen, O'Ordine, and Million were deliberately indifferent to his serious medical needs by denying him requested medical information, such inaction simply does rise to the level of an Eighth Amendment violation. The Eighth Amendment claim against those defendants will thus be dismissed for failure to state a claim upon which relief may be granted.

11

At this nascent stage in the litigation, however, the same cannot be said of the remaining Eighth Amendment claims of denied and delayed medical treatment and of conspiracy to deny and delay treatment.  The Court will thus allow those § 1983 claims to proceed[8] against the following defendants in their official capacities for injunctive relief and in their individual capacities for damages:  Dr. White, Dr. Haas, Dr. Khayat, Nurse Iweimrin, Commissioner Taylor, Dr. Crall, Warden Seabold, Warden Chandler, Deputy Warden Hazelwood, and Deputy Warden Mugavin.

## 2. Denial of two visits with his sister

"Since Congress has never legislated a statute of limitations period for section 1983 actions, the courts . . . have had to look to analogous state statutes."  *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 180 (6th Cir. 1990).  The Supreme Court has determined that "courts considering § 1983 claims should borrow the general or residual statute for personal injury actions."  *Owens v. Okure*, 488 U.S. 235, 250 (1989); *Wilson v. Garcia*, 471 U.S. 261, 280 (1985) ("[S]ection 1983 claims are best characterized as personal injury actions.").  In Kentucky, § 1983 actions are limited by the one-year statute of limitations found in Ky. Rev. Stat. Ann. § 413.140(1)(a).  *Collard v. Ky. Bd. of Nursing*, 896 F.2d at 182.  The Kentucky statute requires a plaintiff to commence his action within one year after the cause of action accrues.  Ky. Rev. Stat. Ann. § 413.140(1)(a).  In the case of a prisoner's civil action, the one-year period is tolled

---

[8]The Court is aware that some of the medical treatment claims may be barred as untimely and/or on res judicata grounds.  See prior action 3:03CV-P535-C, wherein the plaintiff sued Defendant Hazelwood for alleged deliberate indifference to his serious medical need.  The Court will, nonetheless, allow the parties to address those arguments, including any equitable considerations, before rendering a decision on either or both bases.

for the time period during which available state remedies are being exhausted. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000).

Under federal law, "the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action and that a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Collard v. Ky. Bd. of Nursing*, 896 F.2d at 183 (citing *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)). An action is commenced when the complaint is filed with the Court. Fed. R. Civ. P. 3.

The denied visits about which the plaintiff complains occurred on September 7, 2003, and October 5, 2003. He filed a grievance following each incident. *See* DN 3, Compl., Exs. 4 & 5. Defendant Commissioner Taylor denied the first grievance (No. 03-255-KSR) on November 5, 2003, and Defendant Acting Commissioner Million denied the second grievance (No. 03-295-KSR) on January 7, 2004. The plaintiff's denied visitation claims thus accrued at the latest on January 7, 2004, at the completion of the administrative remedy process, and ended one year later on January 7, 2005. Because the plaintiff did not file the complaint until July 6, 2005, when he deposited it in the prison mail system for mailing, *see Houston v. Lack*, 487 U.S. 266, 270 (1988) (holding that a *pro se* prisoner's notice of appeal on habeas corpus review is deemed filed on the date that it is turned over to prison officials for transmittal to court); *Richard v. Ray*, 290 F.3d 810, 813 (6th Cir. 2002) (holding that the mailbox rule to *pro se* prisoner complaints), the denial-of-visitation claim is time barred and must be dismissed.

### 3.  Denial of stamps and copies despite indigency

Although the plaintiff alleges a violation of the First, Fifth, Eighth and Fourteenth Amendments, the Court finds that his claim that he was denied stamps and copies is more properly brought under only the First Amendment.  The purported Fifth, Eighth and Fourteenth Amendment claims based on this allegation will therefore be dismissed as frivolous.

Courts have repeatedly recognized the constitutionally protected right of meaningful access to the courts.  "It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them." *Bounds v. Smith*, 430 U.S. 817, 824-25 (1977).  "This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access.  But the cost of protecting a constitutional right cannot justify its total denial." *Id.* at 825.  Meaningful access will vary with the circumstances, and officials are to be accorded discretion in determining how that right is to be administered.  *Id.* at 830-31; *John L. v. Adams*, 969 F.2d 228, 233-34 (6th Cir. 1992).  "The inquiry is [] whether law libraries or other forms of legal assistance are needed to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. at 825.

To state a claim for a denial of access to the courts, a prisoner will have to demonstrate actual prejudice to pending litigation that challenges his conviction or conditions of confinement. *Lewis v. Casey*, 518 U.S. 343, 355 (1996).  That is, there must be an actual injury, and no actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Id.* at 356.  In addition, "only

14

prisoners with non-frivolous underlying claims can have standing to litigate an access-to-courts action." *Hadix v. Johnson*, 182 F.3d 400 (6th Cir. 1999) (quoting *Lewis v. Casey*, 518 U.S. at 353 & n.3 ("Depriving someone of a frivolous claim, . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.")).

The plaintiff alleges that the defendants, specifically Allen, Purvis, O'Ordine, and Million, have denied him access to courts by denying his requests for stamps, legal copies, and copies of medical records even though he is indigent.[9]  He has not shown any actual injury from these denied services, however, as he wholly fails to allege that any non-frivolous claim has been lost or rejected or that any non-frivolous, pending claim is unable to be presented.  While he alleges that he needed a copy of his medical records to file the instant civil action, such records are not needed to file the initial complaint, and in later stages of litigation, those documents are readily obtainable through the normal discovery process.  He also broadly claims that he previously needed legal copies to file an appeal to Kentucky Supreme Court, but he fails to allege the rejection of any non-frivolous claim on appeal for lack of sufficient copies.

For the foregoing reasons, the plaintiff's claim that he was denied access to courts because he was denied stamps, legal copies, and copies of medical records must be dismissed for failure to state a claim upon which relief may be granted.

---

[9]On one occasion in the complaint, the plaintiff mentions in passing that he was denied access to the law library.  This claim lacks the specificity needed to make out a § 1983 claim.  The plaintiff fails to specify whether he suffered a total denial of access to the law library or whether the denial was on only one occasion, and he fails to identify who denied him access.  He has additionally failed to allege any prejudice to litigation, *Walker v. Mintzes*, 771 F.2d at 932 (finding that an inmate claiming his access to the courts was denied merely because he was denied access to the prison library fails to state a claim absent any showing of actual prejudice to his litigation), and the legal references in his complaint demonstrate that he had legal assistance from some source.

### 4. <u>No Meaningful Grievance Procedure</u>

The plaintiff's allegation of no meaningful grievance procedure at the KSR also fails to establish a violation of his First Amendment right to access the courts. As above, he fails to demonstrate any actual injury or prejudice to pending litigation. He does claim that medical issues were non-grievable prior to December 2004, prohibiting him from filing an action on those issues in federal court during that time period, but he misunderstands the law. The Prison Litigation Reform Act only requires exhaustion of "administrative remedies as are *available*." 42 U.S.C. § 1997e(a) (emphasis added). Because medical issues were non-grievable prior to December 2004, no grievance mechanism was *available*, and there was no exhaustion barrier to the plaintiff's filing suit at that time.

The plaintiff additionally alleges that grievances have been denied because they have been filed outside of the five-day limit required under Corrections Policy and Procedure 14.6. This requirement does not bar him from accessing the federal courts. Although not entirely clear from the attached grievances, it appears that the grievance coordinator would not file or assign a number to the plaintiff's grievances if they were submitted outside the five-day limit. In such case, the grievance mechanism again would not be *available* to the plaintiff, and he could file suit in federal court. If, however, the grievance was filed and assigned a number but denied by the committee on untimeliness grounds, then the plaintiff could have, and would have been required to, continue through the appeal process to the Commissioner. Upon completion of the grievance process, the plaintiff could have then filed suit in federal court on the grieved issues.

In sum, when a grievance is rejected as barred by the five-day time limit, either the administrative remedies are not available to the plaintiff entitling him immediately to file suit in

16

federal court, or administrative remedies are available to him despite the untimeliness of the grievance requiring him to complete each stage of the grievance process prior to filing suit. *Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003) (concluding that "a prisoner who has presented his or her grievance through one complete round of the prison process has exhausted the available administrative remedies under 42 U.S.C. § 1997e(a), regardless of whether the prisoner complied with the grievance system's procedural requirements" such as timeliness). Thus, under either scenario, the plaintiff's access to the courts is not denied by the defendants.

As to any Fourteenth Amendment due process claim he may be asserting, prisoners do not possess a constitutional right to a prison grievance proceeding, *see Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Spencer v. Moore*, 638 F. Supp. 315 (E.D. Mo. 1986); *O'Bryan v. County of Saganaw*, 437 F. Supp. 582, 601 (E.D. Mich. 1977), and state law does not create a liberty interest in grievance proceedings. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Corn v. Lewis*, No. 92-0098, 1993 WL 210702, at *1 (6th Cir. June 15, 1993); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.), *cert. denied*, 488 U.S. 898 (1988). If the prison provides a grievance process, violations of its procedures do not rise to the level of a federal constitutional right, *Spencer v. Moore*, 638 F. Supp. at 316, and a plaintiff has no right to an effective grievance procedure. *See Ishaaq v. Compton*, 900 F. Supp. 935, 940-41 (W.D. Tenn. 1995); *Flowers v. Tate*, Nos. 90-3742, 90-3796, 1991 WL 22009 (6th Cir. Feb. 22, 1991). Therefore, a failure to follow the grievance procedures does not give rise to a § 1983 claim. *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

17

Finally, the plaintiff has failed to show that the alleged less-than-perfect grievance mechanism in any way violates any provision of the Fifth Amendment or constitutes cruel and unusual punishment violative of the Eighth Amendment.

Accordingly, the plaintiff's claim of a faulty grievance process must be dismissed for failure to state a claim upon which relief may be granted.

### 5.  Retaliation

Retaliation for the exercise of a constitutional right is itself a violation of the Constitution actionable under § 1983. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  "In a retaliation claim . . . the harm suffered is the adverse consequences which flow from the inmate's constitutionally protected action.  Instead of being *denied* access to the courts, the prisoner is penalized for actually exercising that right."  *Id.* (emphasis in original).

> A retaliation claim essentially entails three elements:  (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Id.*

The plaintiff's retaliation claim is scattered throughout the lengthy complaint and is not a model of clarity.  At one point in the complaint, he claims that he "can [] show further violations of [his] Civil Rights under the Mental Health Program and Medical Treatment in *retaliation* for his speaking out against the Physical and mental abuse he has suffered by the Defendants," (DN 3, Compl., p. 7-A) (emphasis added), and that "unnamed Correctional Staff have taken retaliatory actions against [him] and correctional Staff for reporting instances."  *Id.*  These are broad and vague statements, and although it is unclear exactly what the plaintiff is claiming, it is

18

clear that he has alleged no viable retaliation claim.  The plaintiff fails to identify any defendant who purportedly engaged in unspecified "retaliatory actions" against him.  The foregoing allegations simply insufficient to make out a cognizable retaliation claim.  *Deaton v. Montgomery County*, 989 F.2d 885, 889 (6th Cir. 1993) ("Congress did not intend § 1983 liability to attach where causation is absent."); *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988) (explaining that a complaint must contain "'either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984)); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986) ("It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law.  Some factual basis for such claims must be set forth in the pleadings.").

The plaintiff later in the complaint claims that he can prove that the defendants' denying him access to the law library and copy room constituted retaliation.  *Id.* at p. 7-H.  Here, he alleges only the second prong of a retaliation claim, adverse action, but he has alleged no protected conduct.  He then states, "They knew Plaintiff's nose was infected, yet did nothing, they knew after a few weeks, Plaintiff had cancer, yet they did nothing for 50 plus days, and they do not like Plaintiff's criminal charges, which will prove retaliation."  *Id.*  Again, he alleges adverse action in the form of denied medical treatment, but he has demonstrated no protected conduct in which he engaged.  On yet another occasion, the plaintiff mentions retaliation by Defendants Chandler and Purvis due to their not allowing him to file a grievance.  *Id.* at p. 7-T.  Interestingly in this case, the plaintiff is not complaining that adverse actions occurred because

19

he engaged in the protected conduct of filing a grievance; rather, he claims that his inability to file a grievance was the adverse action and fails to allege any protected conduct.

Finally, in the exhaustion section of the complaint, the plaintiff writes that he grieved the following claims:

> Denial of Medical treatment, letting my cancer get so bad, they had to remove my nose, and after care treatment after returning from hospital, infections in my leg, due to lack of medications and after care, denying me a visit from my sister, due to this grievance, all on retaliation purposes only against me for filing grievances on my denial of medical care and treatment, and the lack thereof.

In this instance, the plaintiff alleges that he was engaged in protected conduct–the filing of grievances.  And he alleges adverse action–denied medical treatment resulting in worsening of cancer and removal of his nose, inadequate aftercare upon his return from the hospital, and denied visits from his sister.  He fails, however, to demonstrate a causal connection between his filing of grievances and the alleged adverse actions; the adverse actions about which he complains occurred in 2003 and are thus time barred; and he fails to identify which, if any, of the named defendants were involved in the retaliation.

For the reasons set forth more fully above, the plaintiff has failed to allege a retaliation claim sufficient to survive initial screening of the complaint, and that claim will be dismissed for failure to state a claim upon which relief may be granted.

### D.  Supplemental state-law claims

The state-law claims raised by the plaintiff "are so related to" the federal claims upon which this Court's jurisdiction rests "that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  For this reason, the Court will exercise its supplemental jurisdiction over

20

those claims.  The plaintiff broadly alleges a violation of Sections 13, 14, 109, and 112 of the Kentucky Constitution.  While he lists those sections repeatedly throughout his complaint, he fails to explain how each applies to the facts at hand thereby warranting dismissal of those claims without further discussion.  The Court will nonetheless more thoroughly address why the plaintiff fails to state a claim under each section.

Section 13 provides, "No person shall, for the same offense, be twice put in jeopardy of his life or limb, nor shall any man's property be taken or applied to public use without the consent of his representatives, and without just compensation being previously made to him." As the plaintiff wholly fails to explain how Kentucky's double jeopardy and eminent domain provisions apply to the instant action, he has failed to state a claim under Section 13 of the Kentucky Constitution.

Under Section 14 of the Kentucky Constitution, "All courts shall be open, and every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."  The Court has already concluded that under the federal constitution, the plaintiff has failed to demonstrate that he was denied access to court or denied due process.  For those same reasons, the Section 14 claim is also meritless.

Finally, Section 109 describes the judicial power of the Commonwealth of Kentucky, and Section 112 prescribes the location, composition, administration and jurisdiction of the circuit courts of the Commonwealth of Kentucky.  Those sections clearly have no application in this instance.

21

For the foregoing reasons, the state-law claims arising under Sections 13, 14, 109, and 112 of the Kentucky Constitution will be dismissed for failure to state a claim upon which relief may be granted.

Despite dismissal of those claims, the Court nevertheless liberally construes the complaint as additionally asserting a claim of intentional infliction of emotional distress.  *See Craft v. Rice,* 671 S.W.2d 247, 251 (Ky. 1984).  Because the Court has allowed the plaintiff's Eighth Amendment claims to proceed against Defendants Dr. White, Dr. Haas, Dr. Khayat, Nurse Iweimrin, Commissioner Taylor, Dr. Crall, Warden Seabold, Warden Chandler, Deputy Warden Hazelwood, and Deputy Warden Mugavin, and because his claim of extreme emotional distress is founded upon the same alleged conduct, the Court will also allow the supplemental state-law claim to proceed against those same defendants.

In allowing the federal Eighth Amendment claims and the state intentional infliction of emotional distress claim to continue, the Court passes no judgment on the ultimate merit of the plaintiff's allegations.

The Court will enter a separate Scheduling Order governing the development of the remaining claims and will enter a separate Order dismissing all other claims.

Date:

cc:     Plaintiff, *pro se*
        Defendants
        General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
        4412.005

22