**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:05CV-P399-H**

**STEVE E. MARTIN**                                                                                   **PLAINTIFF**

**v.**

**DR. DOUGLAS CRALL** *et al.*                                                    **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Plaintiff, an inmate at the Kentucky State Reformatory ("KSR"), has filed a motion for temporary restraining order and preliminary injunction[1] seeking "to see a Medical Dr. As soon as possible" due to "a bad foot infection, that will not heal" and for a similar problem with his right hand. In the motion, he reports that his feet have green fluid leaking from them and that they are raw and bleeding, and in attachments, he reports that he has "an unknown problem causing blisters on fingers of right hand causing finger to swell and becom[e] painfully raw." Plaintiff reports that despite numerous requests, he cannot get an appointment with any nurse practitioner or physician at the facility, and he contends that he is being denied medical treatment in retaliation for filing the instant action. He supported his motion with his own affidavit as well as affidavits of fellow inmates.

The grant or denial of a temporary restraining order and preliminary injunction is discretionary with the Court. *See Summit County Democratic Cent. and Executive Comm. v. Blackwell*, 388 F.3d 547, 553 (6th Cir. 2004). In deciding whether or not the requested injunctive relief is appropriate, the Court must consider four factors: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the

---

[1] Plaintiff styled his motion as one for preliminary injunctive relief, but in the body of the motion, he additionally asks for a temporary restraining order.

public interest would be served by granting the [motion]." *Ne. Ohio Coal. for Homeless and Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).

In Defendants' responses (DNs 93, 97 & 102), they note that Plaintiff failed to identify the specific individuals that he seeks to enjoin and that he failed to exhaust his administrative remedies as to this claim. Defendants demonstrate, by affidavits and medical records, that Plaintiff had begun receiving treatment for his skin problems by the time his motion reached the clerk's office for filing. He was initially examined by a nurse practitioner, who ordered a lab culture, and a week later, he was examined by Dr. Mazen Khayat, who continued Plaintiff on Cipro, ordered Mycolog cream for use on the eczematous areas, and instructed Plaintiff to avoid excessive sweating. Five days later, Dr. Khayat ordered Plaintiff's placement in the KSR Nursing Care Facility for further treatment of his recurrent skin problems. Plaintiff was treated at the facility for a two-week period, and upon discharge, he was provided with Velcro-type surgical shoes.

The Court further notes that Plaintiff concedes that his skin problems have recurred for over fifteen years, and the record discloses recent treatment of his skin problems in the months preceding the filing of the motion for emergency relief. For complaints of drainage of his left foot with peeling skin in January 2006, he was examined by a registered nurse, a nurse practitioner, and Dr. Mazen Khayat; underwent laboratory testing; and was prescribed Cipro and Diflucan, Mycolog and Silvadene creams, foot soaks with antimicrobial soaps and brush, and crutches. And for complaints of right hand pain, swelling and discharge in June 2006, he was seen by a nurse practitioner, who ordered blood work and prescribed Keflex and Triamcinolone cream.

Because medical records submitted by both Plaintiff and Defendants demonstrate that Plaintiff has received and continues to receive treatment for his recurrent skin conditions (including, as specifically requested in his motion, examination by a physician), the Court

concludes that there is neither an immediate need nor a likelihood of success on the merits of a denial-of-medical treatment claim or retaliation claim. Moreover, he has failed to identify any Defendant who allegedly engaged in retaliatory inaction and to show a causal connection between the delay in the provision of treatment and the filing of the complaint.

For these reasons, **IT IS ORDERED** that the motion for preliminary injunction and temporary restraining order (DN 82) is **DENIED**.[2]

Date:

cc:  Plaintiff, *pro se*
     Counsel of Record
4412.005

---

[2] The Court notes that following the Plaintiff's receipt of all of the treatment modalities identified above, he submitted a supplemental filing advising that his feet and hands "are still broken out" and that he has not received "any of the prescribed medication" (DN 106). In a document filed two weeks later, however, he suggests that, while delayed, he may have already received the medication, and he further advises that "the State did buy him a pair of shoes. . . . These are Diabetic and may improve his foot problems also." (DN 109). It, thus, appears that Plaintiff is continuing to receive treatment for his skin condition. The Court notes that this not a case where Plaintiff has not received any treatment. And "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (citations omitted).