UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05CV-P399-H

STEVE E. MARTIN                                                                                       PLAINTIFF

V.

DR. DOUGLAS CRALL, et al.                                                                      DEFENDANTS

**MEMORANDUM OPINION**

Defendants, Scott Haas, Vertner Taylor, Larry Chandler, Barbara Hazelwood, Thomas Mugavin, and Paige McGuire, have moved for summary judgment in this § 1983 claim for deliberate indifference to a serious medical condition that concerned the treatment of his nose and feet, as well as allegations of intentional infliction of emotional distress. The Court has already dismissed all other claims. For a variety of reasons, the Court concludes that the remaining claims should be dismissed as well.

I.

Plaintiff filed this action on July 7, 2005, alleging defects in his medical care before and shortly after surgery on his nose. Plaintiff was diagnosed with cancer on his nose. Treatment required the amputation of the nose, which occurred on July 14, 2003. He was not immediately provided with a prosthetic nose. He was provided with a prosthetic nose after a period of time. However, he now disputes whether the prosthesis is satisfactory.

Larry Chandler did not become warden of KSR until November 2003. He did not work at KSR at the time of Plaintiff's surgery. Plaintiff states only that Chandler was "behind Plaintiff not getting his nose." He also states that "Chandler, indirectly caused Plaintiff to lose his nose,

and had the authority to correct this problem as it exists today, but has not taken any measures to correct said problem." Plaintiff further states that he believes "Warden Chandler has been forcing the Doctors to make wrong decisions against Plaintiff, and his medical care." He lastly indicates that copies of letters concerning his feet were sent to Warden Chandler. There is no evidence that Chandler made any of the medical treatment decisions concerning this case. Nor did he participate in any decisions concerning a prosthetic nose for Plaintiff.

Barbara Hazelwood was formerly a deputy warden at the Kentucky State Reformatory. Plaintiff alleges that Deputy Warden Hazelwood's responsibilities included making medical decisions for inmates and denying recommended care by outside doctors. The latest date in his allegations appears to be indicated in a memo from Deputy Warden Hazelwood dated January 5, 2004 pertaining to appointments for his feet. For a period of time Hazelwood did have administrative oversight of the medical department at KSR. These duties ended when she became the deputy warden over programs on March 1, 2004. On September 16, 2004, she became a deputy warden at Luther Luckett Correctional Complex. Even when she had administrative oversight of the medical department at KSR, she did not make medical decisions and could not order specific medical treatment or a prosthesis for an inmate.

Thomas Mugavin was formerly a deputy warden at KSR. He retired effective February 29, 2004. Plaintiff alleges that Deputy Warden Mugavin was aware of Plaintiff's nose and its condition and let the infection persist. He alleges that Deputy Warden Mugavin knew of the problem with the nose because he saw the swelling and improperly refused to treat the nose. He did not make any medical treatment decision concerning Plaintiff and did not have authority to order specific medical treatment for Plaintiff. Medical treatment decisions were made by

medical staff.

Paige McGuire is currently a deputy warden at KSR. She formerly had administrative oversight of the medical department at KSR from April 16, 2004 to July 1, 2006. Plaintiff alleges that McGuire impaired Plaintiff's access to correct medical treatment. Plaintiff appears to allege that McGuire knew that he was not receiving a prosthesis and that he was not receiving treatment after his nose was removed. He alleges that she personally saw his nose, but did nothing. He also asserts that McGuire "possibly told" nurses not to provide him with items to care for his nose after surgery. Administrative oversight of the medical department included supervising fiscal matters, handling personnel issues, and facilitating the operation of the medical department. There is no evidence that she made medical decisions concerning Plaintiff. Medical staff provided medical treatment and made medical treatment decisions regarding inmate medical care at KSR. Paige McGuire did not have the authority to order specific medical treatment or surgery. She had no authority to order a prosthetic nose for Plaintiff and did not impair access to medical treatment for him.

Vertner Taylor was formerly the commissioner of the Department of Corrections, retiring effective December 31, 2003. Plaintiff alleges that Taylor was commissioner while he was seeking medical attention for his nose and that Taylor failed to intervene and correct the problem. He alleges that Taylor was notified of the problem by a letter Plaintiff wrote to the governor. Plaintiff also alleges that some grievances were sent to Taylor, but that some did not reach him. No grievances were sent to Taylor in 2003. When Taylor was commissioner he did not participate in the medical treatment decisions concerning Plaintiff's nose, surgery, or prosthetic nose.

Scott Haas became medical director for the Department of Corrections on July 1, 2004. Plaintiff alleges that Dr. Haas took his time approving the surgery for the cancer on his nose and this caused the cancer to spread to Plaintiff's lymph nodes; that the surgery was Dr. Haas' "sole decision" and the operation was not approved soon enough; and that Dr. Haas denied the surgery and is responsible for his injury.

There is no evidence that Dr. Haas was involved in the approvals for tests and surgery concerning Plaintiff's nose since he was not medical director at the time of Plaintiff's operation in 2003. Dr. Haas was involved in the final administrative review of a grievance concerning a prosthetic nose after he became medical director with the decision dated December 20, 2004. Plaintiff's surgery occurred on July 14, 2003. Dr. Haas did not become medical director until July 1, 2004 and he did not participate in the decisions concerning treatment and surgery for the cancer on Plaintiff's nose.

After an opportunity for discovery, Defendants have moved for summary judgment.

II.

The statute of limitations for a § 1983 action is the Kentucky one-year statute for personal injury, K'S 413.140(1)(a). *Wilson v. Garcia*, 471 U.S. 261, 280 (1985); *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). Plaintiff brought this action on July 7, 2005. Any claim prior to July 7, 2004, is barred by the statute of limitations. These circumstances manifestly eliminate some of the Defendants remaining in this action.

Several Defendants were no longer employed by the Department of Corrections on July 7, 2005. Vertner Taylor retired from the Department of Corrections effective December 31, 2003. William Seabold retired effective November 30, 2003. Thomas Mugavin retired effective

4

February 29, 2004. Barbara Hazelwood was a deputy warden involved with administrative oversight of the medical department at the Kentucky State Reformatory. She became Deputy Warden of Programs on March 1, 2004, and no longer had administrative oversight of the Medical Department after that date. Therefore, the constitutional claims against each of these Defendants must be dismissed because they are barred by the statute of limitations. Therefore, claims against her are barred by the statute of limitations.

Even if Plaintiff had been correct with his dates and Dr. Haas had been involved with the decision concerning the surgery for the cancer on Plaintiff's nose, all of this occurred prior to Plaintiff's surgery on July 14, 2003. All claims involving decisions about pre-surgery treatment, surgery, and after care through July 7, 2004, are barred by the statute of limitations.

### III.

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical need in violation of his rights under the Eighth Amendment because he did not receive a prosthetic nose at the time he requested one. The facts show that Plaintiff disputes whether the medical professionals provided the appropriate course of treatment for him. However, they certainly did not ignore his condition or the treatment of it. Under such circumstances, the evidence does not support a viable constitutional claim.

The Eighth Amendment prohibits cruel and unusual punishment dispensed in a penal or disciplinary sense. *Hamelin v. Michigan*, 501 U.S. 957 (1991). This standard is applied to the states through the Fourteenth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). The Supreme Court has held, '[i]n order to state a cognizable claim" under the Eighth Amendment concerning medical care an inmate "must allege acts or omissions sufficiently harmful to

5

evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97 (1976). The standard for deliberate indifference includes subjective and objective components. *See Napier v. Madison Co.*, 283 F.3d 739, 742 (6th Cir. 2001). When considering such a claim, this Court asks whether the officials acted with a sufficiently culpable state of mind and whether the alleged wrongdoing was "objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 2 (1992), *quoting Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The subjective component requires the offending conduct to be wanton in nature. It must be composed of "malicious and sadistic acts whose very purpose is to inflict harm." *Moore v. Holbrook,* 2 F.3d 697, 700 (6th Cir. 1993). "It is *obduracy or wantonness, not inadvertence or good faith error,* that characterize" deliberate indifference. *Wilson v. Seiter*, 501 U.S. at 299, *quoting Whitley v. Albert*, 475 U.S. 312, 319 (1986). Any medical condition must be objectively serious.

Allegations of medical malpractice or negligent diagnosis and treatment do not state a valid claim under § 1983. *Estelle v. Gamble*, 429 U.S. at 106; *see also Birrell v. Brown*, 867 F.2d 956, 958 (6th Cir. 1989). Inmates are not entitled to "unqualified access to health care" under the Constitution, and deliberate indifference is governed by "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). Medical care must be immediately necessary. *Caldwell v. Moore* 968 F.2d 595, 602 (6th Cir. 1992). If a plaintiff has received medical attention, a court should not second-guess the judgment of the medical professionals providing such treatment. *Estelle v. Gamble,* 429 U.S. at 107.

Plaintiff only states a disagreement with the medical care provided to him. Plaintiff believed that the prosthetic nose was necessary. The physicians initially and reasonably decided

6

to delay the prosthetic nose so that sufficient time could pass to indicate whether the cancer would recur. The prosthetic nose was later provided. Plaintiff has not provided medical evidence that the delay was detrimental to his health. There is no evidence that Dr. Haas or any other Defendant was deliberately indifferent to Plaintiff concerning the provision of a prosthetic nose. There is no evidence that the failure to provide an immediate prosthesis caused a further serious medical condition.

Plaintiff also vigorously argues that the prosthetic nose provided is "badly made, discolored, deformed" and mismatched to his skin. The disagreements with his physicians became so heated that one allegedly told Plaintiff not to return. While this dispute may be real, it falls far short of one with constitutional dimensions. It is a dispute about the appropriateness of medical care. Defendants have certainly not ignored his condition. For these reasons, Plaintiff's claim concerning the prosthetic nose must be dismissed.

IV.

Plaintiff states that Defendants "solely intended to cause him emotional distress, extreme emotional distress and outrage, by denying Plaintiff the needed operation." The Court has construed the complaint as asserting the state claim of intentional infliction of emotional distress, also known as outrage, although Plaintiff is not particularly clear about this claim. The Kentucky Supreme Court first recognized the claim of outrage or intentional infliction of emotional distress in the case of *Craft v. Rice*, Ky., 671 S.W.2d 247 (1984). The court adopted the Restatement (Second) of Torts, § 46, subsection 1, which sets out the tort. The tort of outrage was intended as a "gap-filler" tort. It was intended to be available when another action was not available and the "actions . . . [are] intended only to cause extreme emotional distress in

7

the victim." *Humana of Ky. Inc. v. Seitz*, Ky., 796 S.W.2d 1, 7 (1990). In *Rigazio v. Archdiocese of Louisville*, Ky.App., 853 S.W.2d 295 (1993), the Kentucky Court of Appeals stated:

> Taking into account the history of the tort of outrage, and its reason for being as a "gap-filler" providing redress for extreme emotional distress in those instances in which the traditional common law actions did not, we believe that § 47 recognizes that where an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie.

*Id.* at 298-9. *See also Banks v. Fritsch*, Ky.App., 39 S.W.3d 474, 480-81 (2001). Plaintiff had available to him the constitutional tort of deliberate indifference. There is no evidence that medical treatment decisions concerning his nose and the few months time from Plaintiff's complaint until the surgery for cancer was intended only to cause extreme emotional distress. Nor is there any evidence that the decisions and time frame for providing the prosthetic nose were intended to only cause extreme emotional distress. Plaintiff also had available to him the tort of negligence if he did not believe that his medical care was appropriate. The tort of outrage or intentional infliction of emotional distress is not available to Plaintiff, since the constitutional tort of deliberate indifference and the tort of negligence were available to him.

The Supreme Court described the elements of proof necessary to sustain a cause of action for the tort of outrageous conduct in *Humana of Ky. Inc. v. Seitz,* Ky., 796 S.W.2d 1 (1990). The court stated:

> [W]e recognized the elements of proof necessary to sustain the cause of action:
> 1) the wrongdoer's conduct must be intentional or reckless;
> 2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;
> 3) there must be a causal connection between the wrongdoer's conduct and the

8

>    emotional distress; and
>    4) the emotional distress must be severe.

*Id.* at 2-3.  Plaintiff has not shown intentional or reckless conduct for Defendants for this claim.  He also does not meet the second element, which requires that the conduct complained of be "outrageous and intolerable in that it offends against the generally accepted standards of decency and morality." *Humana v. Seitz*, 796 S.W.2d at 2.  This is a high standard which few meet.  The *Humana v. Seitz* case involved a woman who gave birth to a stillborn child n the hospital.  Plaintiff alleged that nurses at the hospital ignored her complaints prior to the birth and during the unexpected delivery of the child one of the nurses shouted at her to "shut up" because she was disturbing other patients.  Plaintiff also alleged that a nurse told her that the stillborn baby would be disposed of at the hospital in response to her question about where the baby was being taken after the birth.  *Id.* at 2.  The Court found as a matter of law that the plaintiff's allegations did not rise to the level required for the tort of outrageous conduct.  Here, Plaintiff's allegations come nowhere close to those necessary to support the tort of outrage.

       The Court will enter an order consistent with this Memorandum Opinion.

cc:    Plaintiff, *Pro Se*
       Counsel of Record