UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05CV-P399-H

STEVE E. MARTIN                  PLAINTIFF

V.

DR. DOUGLAS CRALL, et al.                  DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This is a *pro se* action by an incarcerated prisoner concerning deliberate indifference to a serious medical need. The Court previously dismissed all claims other than the Eighth Amendment claims of deliberate indifference concerning treatment of Plaintiff's nose and feet, dismissed several Defendants, and liberally construed the complaint as alleging a state law intentional infliction of emotional distress claim. Plaintiff amended his complaint and added Paige McGuire as a Defendant. The Court then granted summary judgment as to Scott Haas, Vertner Taylor, Larry Chandler, Barbara Hazelwood, Thomas Mugavin, Paige McGuire and Sal Iweimrin. The Court amended that order so that it did not dismiss the claims left remaining against Doug Crall, William Seabold, Mazen Khayat, and Steve White. Now those remaining Defendants have moved for summary judgment.

I.

In its prior opinions the Court thoroughly summarized the facts. It now adds only those pertinent to the remaining Defendants.

William Seabold was formerly the warden at KSR. He retired effective November 30, 2003. No evidence suggests that he made any medical treatment decisions concerning Plaintiff.

Seabold did not have the authority to order medical staff or the medical director for the Department of Corrections to provide specific medical treatment. Plaintiff alleges that Seabold was the warden during the time that Plaintiff learned he had cancer and that the warden had to have known about Plaintiff's nose. Plaintiff further alleges that the warden had full say over whether he was treated and had the authority to require the medical director to approve treatment. Lastly, Plaintiff states Seabold had the authority to correct any policy and procedure that conflicts with an inmate's health.

Steven White is a physician who provides medical care to inmates at the Kentucky State Reformatory. He was first employed by the Department of Corrections ("DOC") on or about April 15, 2003. Dr. White first saw Plaintiff on May 1, 2003. He initially believed Plaintiff had an intra-nasal skin infection and treated him with antibiotics. He set up a biopsy appointment and Plaintiff asserts that security staff did not inform him of the appointment. When Dr. White saw Plaintiff for his next appointment in June, he ordered an urgent appointment with an outside dermatologist. The dermatologist also treated Plaintiff with antibiotics and referred him to an ear, nose and throat ("ENT") specialist. Plaintiff had a CT scan on July 9 and a preoperative appointment with the ENT on July 11. The surgery was performed on July 14, 2003. Plaintiff had some minor infection problems with his leg skin donor site, but these cleared readily with topical and oral antibiotics. Plaintiff was transferred from Dr. White to another doctor as his primary care provider on October 1, 2003.

Plaintiff makes numerous allegations in the complaint concerning Dr. White and the treatment of his nose prior to surgery on July 14, 2003. A number of Plaintiff's allegations concerning his nose predate Dr. White's employment with the DOC. Plaintiff also makes

allegations concerning the skin donor site on his leg after the surgery.

Mazen Khayat was formerly a physician who provided medical care to inmates at the Kentucky State Reformatory. He resigned to take another position effective December 1, 2006. Dr. Khayat was not involved with Plaintiff's treatment of his nose until after the surgery was performed on July 14, 2003. Dr. Khayat provided care for Plaintiff for about two weeks after he was discharged from the hospital on July 16, 2003. During this time Dr. Khayat did not see signs of infection in the skin graft donor site on Plaintiff's leg, but did see serious drainage which is expected. Dr. Khayat requested a consult for a prosthetic nose both in 2004 and in January 2006. The prosthesis had to go through an approval process in central office. Plaintiff had previously had a cancer on the upper lip that was excised and required radiation treatment for the nose cancer.

Plaintiff alleges that he received no treatment for the skin donor site on his leg at KSR, the leg became infected, and he almost lost the leg. Plaintiff alleges that he had green drainage from his feet in December 2003. He further states that Dr. Khayat saw him on several occasions and prescribed medications, but takes issue with being returned to the prison dorm rather than the nursing care facility at KSR. Plaintiff acknowledges that Dr. Khayat made a consult request concerning a prosthetic nose. Plaintiff had a recurrent severe case of athlete's feet, which was complicated on several occasions with eczema and infection for the past 15 years. Dr. Khayat saw him on multiple occasions for the complaint with his feet and prescribed for him at various times local antiseptic treatment with antibiotic or antifungal medications. He was treated for this condition by various providers.

Doug Crall was formerly the interim medical director for the DOC. He held this position

from June 1, 2002 through June 30, 2004. He did not provide day-to-day medical care for Plaintiff. He gave verbal approval for an ENT consult on the same day he spoke with Dr. White concerning the consult. He also gave approval on July 1, 2003, for a CT scan and surgery recommended by the ENT specialist. He was not asked to approve a biopsy and approval was not necessary since it was to be done at KSR. Plaintiff alleges that Dr. Crall was the medical director at the time that treatment was needed for his nose and that he had the authority to stop treatment. Plaintiff further alleges that Dr. Crall had complete control over money spent for medical care and did not allow Plaintiff a prosthetic nose. He also alleges that Dr. Crall deprived him of biopsies requested by Dr. White.

## II.

Civil rights actions alleging violations of constitutional rights are brought under 42 U.S.C. § 1983. The statute of limitations for a § 1983 action is the Kentucky one-year statute for personal injury, KRS 413.140(1)(a). *Wilson v. Garcia*, 471 U.S. 261, 280; *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). Plaintiff brought this action on July 7, 2005.

William Seabold retired effective November 30, 2003. If it is assumed for the sake of argument only that William Seabold violated Plaintiff's constitutional rights, it had to occur prior to his retirement. This occurred more than one year before Plaintiff filed his lawsuit. Likewise, Doug Crall completed his stint as interim medical director on June 30, 2004. Any action that he may have taken occurred more than one year before Plaintiff filed his lawsuit.

Steven White transferred care of Plaintiff to another primary care provider on October 1, 2003. This occurred more than one year before Plaintiff filed his lawsuit. Mazen Khayat did not provide continuous care as primary care provider, but saw him during separate periods of time.

Dr. Khayat's care prior to July 7, 2004, is barred by the statute of limitations.

The constitutional claims against Seabold, Crall and White discussed above should be dismissed in their entirety as barred by the statute of limitations. The Court correctly determined in its decision on the prior motion for summary judgment that claims prior to July 7, 2004, were barred by the statute of limitations and that ruling must apply to these Defendants. Only some claims related to Dr. Khayat's conduct after July 7, 2004, can remain.

III.

Regardless of whether the statute bars a cause of action, neither Seabold nor Crall can be held accountable under a *respondeat superior* theory as warden and medical director. This theory of recovery has been rejected as a basis for a § 1983 claim. *See Monell v. Department of Social Services*, 436 U.S. 658, 691-694 (1978); 42 U.S.C. § 1983. The Sixth Circuit has stated, "The law is clear that liability of supervisory personnel must be based on more than merely the right to control employees." *Hayes v. Jefferson County*, 668 F.2d 869, 872 (6th Cir. 1982).

The Court has previously considered whether other Defendants were deliberately indifferent to Plaintiff's medical needs. The evidence shows that the disputes here are nothing more than disagreements about treatment. The physician Defendants provided timely treatment for Plaintiff's difficulties.

Plaintiff's most serious disagreement concerns his prosthetic nose. The prosthesis itself was not a medical necessity and did not rise to the level of a serious medical need. Nevertheless, Plaintiff believed that he should have been provided with the prosthetic nose sooner than it was provided. However, he has not given any medical evidence to show how his condition worsened because of the delay. *Napier v. Madison Co.*, 238 F.3d 739, 742 (6th Cir. 2001) *quoting Hill v.*

*Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994). Defendants have provided adequate explanation for their actions. A disagreement with medical professionals does not state a claim of deliberate indifference. *Durham v. Nu'man*, 97 F.3d 862, 869 (6th Cir. 1996), *cert. denied* 520 U.S. 1157 (1997). In all other respects, the Court adopts its analysis from its prior Memorandum in this case.

## IV.

In any event, all these "[G]overnment officials performing discretionary functions are afforded qualified immunity, shielding them from civil damages, as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Poe v. Hayden*, 853 F.2d 418, 423 (6th Cir. 1988), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Sixth Circuit established a three-part test to determine whether defendants were entitled to qualified immunity in *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999). First a determination must be made whether the facts stated show that a constitutional violation occurred. Second, if a constitutional violation is shown, then the Court must determine whether the right that was violated was clearly established so that a reasonable person would have known of the right. Lastly, the Court determines "whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d at 691, *citing Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996).

Concerning the delay of providing a prosthetic nose, the first part of the test requires that Plaintiff show that they "kn[ew] of and disregard[ed] an excessive risk to [the plaintiff's] health"

and was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Farmer v. Brennan*, 511 U.S. at 837. No evidence suggests that the lack of a nose prosthesis created an excessive risk to the Plaintiff's health, so Plaintiff cannot satisfy this part of the test.

Moreover, Plaintiff has not established that any of these Defendants knew that their actions might violate the Constitution. Plaintiff has not shown that there is any clearly established law that non-medical staff must make medical treatment decisions or that a medical director must ensure than an inmate receive a prosthetic nose that is not medically necessary at the time the inmate requests the prosthesis, or that Plaintiff receive treatment other than what he received for the recurring problems with his feet. Plaintiff received prompt and active treatment as well as numerous consultations for complex disease problems. Plaintiff has produced no evidence to suggest that his care even violated medical norms. He simply states a disagreement with medical treatment decisions and dissatisfaction with the results.

None of the Defendants acted in an objectively unreasonable manner given the clearly established law. Therefore, Defendants are entitled to qualified immunity and the claims against them should be dismissed.

V.

The Court has already considered whether Plaintiff could state a claim for intentional infliction of emotional distress. None of the facts concerning these Defendants changes that analysis. Based upon that analysis the Court will dismiss these state claims against the remaining Defendants.

Being otherwise sufficiently advised,

7

IT IS HEREBY ORDERED that all Plaintiff's remaining claims against Defendants, Doug Crall, William Seabold, Mazen Khayat and Steve White are DISMISSED WITH PREJUDICE.

This is a final order.

cc: Steve E. Martin, *Pro Se*
      Counsel of Record